UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

```
UNITED STATES OF AMERICA )
                         )
          V.             )          CR-05-30002-MAP
                         )
(1) FRANK DEPERGOLA, and )
(2) ARMANDO BOTTA,       )
```

### GOVERNMENT'S MOTION IN LIMINE TO ADMIT EVIDENCE PURSUANT TO FRE 404(b)

The United States of America, by and through its undersigned attorneys, moves to admit evidence pursuant to Federal Rule of Evidence 404(b), to wit: 1) the reputation of defendant Armando Botta for violence, which was among the extortionate means he used to collect a charged loanshark loan from Leo Daniele as well as an uncharged loanshark loan from Stephen Verducci; and 2) that unindicted co-conspirator Adolfo Bruno was a member of LCN organized crime.

### I.    FACTS

On January 4, 2005, a federal grand jury issued a two count Indictment against defendants Frank Depergola ("Depergola") and Armando Botta ("Botta") charging them with one count of engaging in a conspiracy to use extortionate means to collect a loan and one count of using extortionate means to collect an extension of credit.  The Indictment was supported by evidence from Leone Daniele regarding the defendants' loansharking business.  Daniele will testify that he borrowed money from defendant  Depergola at a usurious rate of interest and that the loan was collected by

Depergola, Bruno and Botta.  Although Daniele never claimed to have been explicitly threatened by the defendants, he will testify that it was his understanding that he might be harmed if he failed to repay the loan.  This understanding was based in part on Daniele's knowledge of defendant Botta's prior criminal record, specifically that he had been convicted of assault and battery by means of a dangerous weapon, to wit: a shod foot and assault and battery.  In addition, Stephen Verducci would testify that he borrowed money from Depergola in approximately 2001. Verducci also knew of Botta's prior conviction for assault and that was part of the reason he understood that harm could come to him if he failed to repay the loan.  Finally, the government seeks to introduce expert testimony by an FBI agent that unindicted co-conspirator Adolfo Bruno was a member of LCN organized crime and that Daniele knew of Bruno's reputation at the time of the loan.  Pursuant to Federal Rules of Evidence 404(b), the government seeks to introduce this evidence in its case-in-chief.

II.  <u>ARGUMENT</u>

Federal Rule of Evidence 404(b) generally governs the admissibility of evidence of actions by a defendant that are extrinsic to the charged offense.  Rule 404(b) states in pertinent part:

> Evidence of other crimes, wrongs, or acts is not
> admissible to prove the character of the person in
> order to show action in conformity therewith.  It may,
> however, be admissible for other purposes, such as
> proof of motive, opportunity, intent, preparation,
> plan, knowledge, identity, or absence of mistake or

accident . . . .

Fed. R. Evid. 404(b).  "The rule is one of inclusion which allows the introduction of evidence of other crimes, wrongs, or acts unless the evidence tends to only prove criminal disposition." United States v. Fields, 871 F.2d 188, 196 (1st Cir. 1987).  See also United State v. Tutiven, 40 F.3d 1, 5 (1st Cir. 1994) ("Rule 404(b) absolutely bars 'other acts' evidence relevant only to prove criminal propensity or bad character.  Its absolute bar is implicated, however, only if the challenged 'other crimes, wrongs, or acts' are relevant **exclusively** to instigate an inference that the defendant is more likely to have acted in a similar fashion by committing the offense for which he is on trial.") (emphasis added).

In the First Circuit, evidence of prior bad acts is admissible if: (1) the evidence has special relevance exclusive of defendant's character or propensity; and (2) the probative value of such evidence is not outweighed by the danger of unfair prejudice, confusion, or misleading the jury.  See United States v. DeCicco, 370 F.3d 206, 211 (1st Cir. 2004); United States v. Frankhauser, 80 F.3d 641, 648 (1st Cir. 1996).  Such evidence should be permitted if the court finds that a jury could reasonably find by a preponderance of the evidence that the defendant committed the "other act."  See Huddleston v. United States, 485 U.S. 681, 685, 689 (1988).

In the instant case, the special relevance of the Rule

404(b) evidence that the government seeks to introduce is

manifest.  In this Indictment, the defendants have been charged

with using extortionate means to collect an extension of credit

and conspiring to do so.  In order to sustain a conviction for

the extortionate collection of debt (18 U.S.C. § 894), the

government is obligated to prove that the collection involved the

use of extortionate means, that is, the express or implied threat

of the use of violence or other criminal means to cause harm to

the person.  These elements will be contested at trial.

In cases of extortion based upon fear of violence, the facts

of fear, actual or anticipated, and of its reasonableness, are

vital factors.  United States v. Carbo, 314 F.2d 718, 740 (9th

Cir. 1963).  To prove a substantive act of extortion, the fear of

the victim is relevant.  Likewise, in proving a conspiracy to

extort, it is important to show a plan to instill fear.  Id. [1]

The government intends to call Daniele, the victim of the

extortionate loan set forth in the Indictment.  The government

also seeks herein to call as a witness Steven Verducci.  Verducci

would testify that he obtained a loanshark loan from Frank

Depergola in approximately 2001 and that the defendant Botta

collected that loan.  If the Court grants this motion, both

---

[1]It should be noted that Count 1 charges the defendants with
engaging in a loansharking conspiracy to use extortionate means
to collect an extension of credit.  For this count, it is
necessary to show only that the defendants planned and intended
that the individual to whom they extended credit would understand
the possible harmful consequences of default or delinquency, not
the actual accomplishment of that intent in particular instances.
See United States v. Annoreno, 460 F.2d 1303, 1308 (7th Cir.
1972)

Daniele and Verducci will testify that at the time they borrowed money from Depergola, they were fearful that the defendants might resort to violence to ensure repayment.  They will explain that although the defendants made no direct threats or statements to them, the bases of their fear came from, among other things, their knowledge that defendant Botta had been convicted in 1992 of assault and battery with a dangerous weapon, to wit: shod foot, and assault and battery as a the result of a severe beating Botta inflicted on a victim during a fight.  The evidence will further show that defendant Depergola teamed up with defendant Botta intending to manipulate this fear for the benefit of Depergola.

The proposed testimony would be offered for no other purpose than to show a basis for the victims' fears that defendant Botta might resort to violence to ensure repayment.  The First Circuit in United States v. Oreto, 37 F.3d 739 (1st Cir. 1994)(where testimony of one of the alleged loanshark borrowers that he knew one defendant "got out of jail for murder" was admissible to show basis for victim's fear) held that such evidence was entirely permissible and reiterated what the Court had made plain in United States v. DeVincent, 546 F.2d 452 (1st Cir. 1976)(no reversible error in admitting one defendant's 20 year old robbery conviction and 10 year old murder indictment as bearing on the understanding of the debtor that default would be punished by violence).  In DeVincent and Oreto, both cases involving allegations that the defendant made extortionate extensions of

credit in violation of 18 U.S.C. § 892, the trial courts admitted

testimony regarding the defendant's prior convictions.  In

DeVincent, the court stated

> Neither of the events could be admitted to show
> that DeVincent was a bad man.  If known to the
> debtor, however, they can be admitted to show
> an element of the crime – the understanding of
> the debtor that default would be punished with
> violence.  The debtor's awareness of the lender's
> earlier conviction, or even indictment, for a
> violent crime surely affects his views of the
> lender's likely collection practices. 546 F.2d at 456-
> 57.

Thus, the First Circuit in Oreto held that DeVincent clearly

holds that a prior conviction for a violent crime – even one

wholly unrelated to the defendant's lending activities – may, if

known to a debtor, influence the latter's reasonable expectations

as to how the lender may collect the loan.  The Court went on to

note that the statute itself permits reputation evidence –

usually a reputation for violence – in more restricted

situations.  See 18 U.S.C. § 892(c).  The evidence of defendant

Botta's prior conviction for the beating of another individual

bears directly on the understanding of the debtors.

The special relevance of the proffered bad act evidence

having been established, the remaining question is whether its

admission would entail undue prejudice.  As to that Rule 403

assessment, the First Circuit has stated that exclusion is only

warranted "'in those instances where the trial judge believes

that there is a genuine risk that the emotions of the jury will

be excited to irrational behavior, and this risk is

disproportionate to the probative value of the offered

evidence.'"  United States v. Zeuli, 725 F.2d 813, 817 (1st Cir.

1984) (quoting United States v. Masters, 622 F.2d 83, 87 (4th

Cir. 1980).  The Supreme Court has likewise made clear that the

determination that evidence of prior or subsequent bad acts is

unduly prejudicial is not to be readily made, stating that

"Congress was not nearly so concerned with the potential

prejudicial effect of Rule 404(b) evidence as it was with

ensuring that restrictions would not be placed on the admission

of such evidence."  Huddleston v. United States, 108 S. Ct. 1496,

1501 (1988).

     The proffered evidence in this case is undoubtedly

"prejudicial," as all evidence is intended to be so.  See

Onujiogu v. United States, 817 F.2d 3, 6 (1st Cir. 1987).  It is

in no sense, however, unduly prejudicial.  At the same time, its

probative value is substantial and it bears directly on what is

expected to be the central issue at trial.  Indeed, it is

essential to establish an essential element of the crime - the

understanding of the debtor that default could be punished by

violence.  Consequently, its admission is warranted.  Finally, to

avoid confusion of issues and to foreclose the jury from using

the reputation evidence to convict the defendants on the "bad

man" theory, the Court, upon admitting the testimony in question,

can instruct the jury as to the limited consideration which might

be given.  In that way, any prejudice flowing from any confusion

of issues by the jury can be eliminated.  For all of these

reasons, the government respectfully moves that the above-

mentioned evidence be admitted.

The government intends to call in its case-in-chief FBI SA Michael A. Campi as the government's expert witness regarding loansharking and La Cosa Nostra (LCN).  SA Campi has reviewed the transcripts and/or the recordings of the meetings among Daniele, Botta, Depergola and Bruno which the government will offer in evidence at trial.  Bruno is captured on video on three separate dates collecting the loan from Daniele.

SA Campi will be asked to explain to the jury the definition of loansharking terms used in the recordings, such as vig, juice, off the top, and others.  SA Campi will also explain to the jury how the loansharking business works.  SA Campi will testify that loanshark loans are made at usurious rates of interest, with no collateral and no documentation.  He will testify that because collection of these loans is not enforceable through normal collection procedures including the court system, if a debtor fails to pay, implicit threats, explicit threats and ultimately violence are used to collect the loan.  SA Campi will testify that the debtor must make weekly interest payments, that these weekly payments do not reduce the principle and that the principle must be paid off in a lump sum.  He will testify that the loans and payments are made in cash.  SA Campi will also testify that in his opinion the collections from Daniele by Bruno, Depergola and Botta involved the use of extortionate means.

SA Campi will also testify regarding the LCN generally and

the Genovese Family specifically.  He will testify regarding

Bruno's role and position within the LCN.  SA Campi will testify

regarding Bruno's role in the loan made to Daniele and collected

by Bruno, Depergola and Botta.  He will testify that during one

of the video recorded meetings among Bruno, Depergola and

Daniele, that Bruno had the authority to require the parties to

make an arrangement regarding repayment of the loan.  SA Campi

will also testify that loansharking in the Springfield area is

controlled by members and associates of the LCN.  SA Campi will

be testifying based upon his training as an FBI agent and his 20

years of experience in investigating numerous LCN and

loansharking cases.

A trial Court is vested with broad discretion to admit such

expert testimony, and decisions to do so have been widely upheld.

See, e.g., United States v. Lamattina, 889 F.2d at 1191, 1194

(1st Cir. 1989); United States v. Ladd, 885 F.2d 954, 959 (1st

Cir. 1989); United States v. Angiulo, 847 F.2d 956, 975 (1st Cir.

1988); Coleman v. DeMinico, 730 F.2d 42, 45 (1st Cir. 1984);

United States v. Fleishman, 684 F.2d 1329, 1335 (9th Cir. 1982).

Under Rule 702, Fed. R. Evid., a witness may be qualified as

an expert "by knowledge, skill, experience, training, or

education."  Fields of knowledge for which experts may be used

are not limited to only scientific and technical, but also

include any specialized knowledge. See, e.g., United States v.

Johnson, 575 F.2d 1347, 1360-1362 (5th Cir. 1978); Soo Line R.R.

Co. v. Fruehauf Corp., 547 F.2d 1365, 1377 (8th Cir. 1977).

Moreover, Rule 702 "is to be broadly interpreted." Mannino v. Intern. Mfg. Co., 650 F.2d 846, 849 (6th Cir. 1981).[2]

As noted, expert testimony is not restricted to only scientific or technical fields, and its admissibility "does not depend on the relative certainty of the subject matter of testimony... [or on] the relative weakness or strength of the factual underpinning of the expert's opinion... " Taenzler v. Burlington Northern, 608 F.2d 796, 798 n.3 (8th Cir. 1979). Accord, Coleman v. DeMinico, supra, 730 F.2d at 47. Rather, Rule 702 explicitly permits expert testimony where any "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."

Accordingly, the Courts have repeatedly upheld the admission of expert testimony concerning the structure and modus operandi of criminal enterprises, their terminology, and identifying the roles of defendants in such criminal enterprises, as well as stating an opinion that the defendant's conduct and statements indicated that he was engaged in the charged criminal conduct. See, e.g., United States v. Weiner, 3 F.3d 17, 21 (1st Cir. 1993)(FBI agent testified as expert in loansharking); United States v. Lamattina, supra, 889 F.2d at 1193-94 (FBI agent's expert testimony based on tape recorded conversations in

---

[2]Rule 702, Fed. R. Evid., provides as follows: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

loansharking case regarding modus operandi of loanshark
operations, meaning of code words used in conversation, and that
recorded conversations involved loansharking transactions
necessary because without the testimony the jury probably would
not have been able to understand the evidence); United States v.
Angiulo, 847 F.2d at 973-975 (FBI Agent's expert testimony based
on tape recorded conversations about the structure and nature of
an organized crime family and that the defendants and other
conspirators were members and close associates of the organized
crime family); United States v. Ardito, 782 F.2d 358, 363 (2d
Cir. 1986); (Expert testimony explaining organized crime terms
"capo," "regime," and "crew"); United States v. Riccobene, 709
F.2d 214, 230-231 (3d Cir.), cert. denied, 464 U.S. 849 (1983)
(FBI Agent's expert testimony explaining organized crime terms
"La Cosa Nostra", "capo", and "consigliere"); United States v.
Scavo, 593 F.2d 837, 840, 843-844 (8th Cir. 1979) (FBI Agent's
expert testimony about "the nature of gambling operations,
gambling terminology, and his opinion as to [the defendant's]
role in [the] bookmaking operation"); United States v. Mason, 582
F.2d 961, 964 (5th Cir. 1978); (FBI Agent's expert testimony that
the defendant's recorded conversations involved bookmaking
activities, explaining bookmaking terminology in the recorded
conversations, and opinion identifying the defendant as a
"sub-bookmaker" working for a commission, calling in betting
wagers to the main recording center, and is in fact not a mere
player); United States v. Milton, 555 F.2d 1198, 1203-1204 (5th

11

Cir. 1977) (Expert testimony that the defendants' recorded conversations involved unlawful bookmaking activities).

III   CONCLUSION

Therefore, the government moves that the Court allow the introduction of the above described testimony into evidence for the reasons stated herein.

Respectfully submitted,

MICHAEL SULLIVAN
United States Attorney

By:   /s/ Todd E. Newhouse

_____
TODD E. NEWHOUSE
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

Hampden,  ss.                          Springfield, Massachusetts
                                       June 2, 2006

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

 /s/ Todd E. Newhouse
TODD E. NEWHOUSE
Assistant U.S. Attorney