UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ] | |
| ] | |
| - against - ] | 05CR30002-MAP |
| ] | |
| ARMANDO BOTTA ] | |

## MOTION IN OPPOSITIION TO GOVERNMENT'S MOTION TO ADMIT EVIDENCE PURSUANT TO FRE 404 (b)

Now comes the defendant, Armando Botta, by and through his attorney, Lori H. Levinson, and hereby moves, pursuant to Federal Rules of Criminal Procedure 12(e) and Federal Rules of Evidence 401, 402, 403 and 404(b) that this Honorable Court preclude the government from:

1. Introducing any testimony and/or other evidence of the defendant's alleged reputation for violence;
2. Calling Stephen Verducci as a witness; and
3. Presenting testimony that unindicted co-conspirator Adolfo Bruno was a member of LCN organized crime.

As grounds therefore, the defendant states that all of the above-mentioned testimony and/or evidence is unnecessary, immaterial and unduly prejudicial.

### A.  Evidence of Armando Botta's Prior Conviction

The government seeks to admit evidence of Armando Botta's 1992 conviction for Assault and Battery with a Dangerous Weapon, to wit: a shod foot. The proffered justification for admission of such evidence in their case-in-chief is that such evidence is relevant to show Leo Daniele's fear that Depergola and Botta might "resort to violence to ensure repayment" based on Daniele's alleged knowledge of Botta's prior conviction; not that it is being offered to show that Botta is a violent person.

First, there is no basis in the evidence, at least as appears from the discovery provided to the defendant by the government to date, that Leo Daniele was aware of Armando Botta's 1992 conviction for Assault and Battery with a Deadly Weapon. At a minimum, if this Court is going to consider admitting evidence of Botta's conviction in

the government's case-in-chief, this Court should allow the defense to conduct a *voir dire*, out of the hearing of the jury, of Daniele's alleged basis of knowledge.

The cases cited by the government in support of its motion to admit alleged reputation evidence of Botta, in the form of his prior conviction for assault and battery with a dangerous weapon, all address the admissibility of evidence of prior misconduct on the part of the *lender*. In those cases, the relevance, if any, of the lender's prior convictions for crimes of violence is the understanding of the debtor in obtaining the loan that violence may be used to collect in the event of non-payment. Here, there is no allegation that Botta was the lender. There will be nothing in the evidence to suggest that Botta had any involvement in the setting up of the loan. In fact, the only evidence of Botta's alleged involvement in the so-called extortionate collection of the extension of credit is his regular appearance over a period of time at Daniele's place of business to pick up money owed to Depergola.

Accordingly, any evidence that Botta had a prior conviction for a crime of violence would serve only to excite the emotions of the jury into believing that Botta is a bad, or violent man, and is disproportionate to the probative value of the proffered evidence.

### B. Testimony of Stephen Verducci

The government states that it intends to call Stephen Verducci as a witness in their case-in-chief. They allege that Depergola had made a loan to Verducci at some point in time, and that Botta participated in collecting payments on the loan from Verducci. Again, as with Daniele, there is no basis in the evidence, at least as appears from discovery provided to the defendant by the government to date, that Stephen Verduccci was in any way, either implicitly or explicitly, threatened by the defendant, and/or that Verducci was aware of Botta's alleged reputation for violence.

Moreover, admission of evidence of Botta's alleged collection of money from Verducci is conduct that was not alleged in the indictment, and whose only purpose at trial would be to allow the jury to infer that Botta is a bad person. It is not relevant to the crimes that are charged, which allege that during a certain period of time, Botta conspired with Depergola and Bruno and did collect extensions of credit by extortionate means from Leo Daniele. Any evidence of other collections is wholly irrelevant to any issue to be tried before this Court with respect to the allegations in the indictment.

### C. Expert Testimony

There is an insufficient basis for this Court to permit the government to present an alleged expert witness to testify to most of the areas proffered by the government in their Motion to Admit.

FRE 702 permits the testimony of experts if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue . . . "  Here, the government states that it seeks to introduce expert testimony "to explain to the jury the definition of loan sharking terms used in the recordings . . . . SA Campi will also explain to the jury how the loan sharking business works."

There is no reason that government witness Daniele cannot explain to the jury the manner and means in which he set up his loan through Depergola and his own understanding of the consequences of nonpayment.  Insofar as Daniele was involved in the borrowing of money from unconventional lenders, with an understanding of the terms of those loans, he is in a position to testify as to the terminology that he used and understood in connection with those loans. The testimony of a so-called expert in such terminology is redundant and unnecessary and should not be permitted.

The government further states that it wishes to have its expert witness testify "regarding the LCN generally and the Genovese family specifically.  He will testify regarding Bruno's role and position within the LCN." Gov. Motion at 9.  First, there is no evidence, at least as evinced by the discovery provided by the government to date, to indicate that Botta was associated with the LCN, other than his acquaintance with Depergola.  Second, there is no indication that Botta had any relationship whatever to Bruno, or that he even knew him.  To allow expert testimony about the LCN in general, and a specific alleged LCN family in particular, would be highly prejudicial to Botta, without any balancing probative value.  In the case against Botta, where his only alleged participation in the alleged collection of an extension of credit by extortionate means is his showing up at Daniele's place of business to pick up payments to be delivered to Depergola, evidence of the structure and workings of an LCN family is prejudicial and not probative of any issue to be decided by the jury.

Finally, the government states that it intends to elicit from its expert witness "that in his opinion the collections by both Depergola and Botta from Daniele involve the use of extortionate means." Gov. Motion at 16-17.

While it is true that FRE 704 permits expert testimony in the form of an opinion that "embraces an ultimate issue to be decided by the trier of fact," Rule 704 "was not intended to allow experts to offer opinions embodying legal conclusions." *United States v. Scop*, 846 F.2d 135, 139 (2d Cir. 1988).  In *Scop*, the trial court allowed a government witness who claimed to be an expert in securities trading practices to testify, at a trial involving allegations of securities fraud, that it was his opinion that the defendants were "active participants and material participants in the manipulation of that stock.  And that these individuals engaged in a manipulative and fraudulent scheme in furtherance of that manipulation." *Id.* at 138.  Stating that the expert "made no attempt to couch the opinion testimony at issue in even conclusory factual statements but drew directly upon the language of the statute . . . concerning `manipulation' and

`fraud'," the court reviewed a number of cases in which experts were permitted to testify to what amounted to legal conclusions, and noted:

> In essence, his opinions were legal conclusions that were highly prejudicial and went well beyond his province as an expert in securities trading. Moreover, because his opinions were calculated to `invade the province of the court to determine the applicable law and to instruct the jury as to that law' . . . they could not have been helpful to the jury in carrying out its legitimate functions. `The admission of such testimony would give the appearance that the court was shifting to witnesses the responsibility to decide the case.' `It is not for witnesses to instruct the jury as to applicable principles of law, but for the judge.'

*Id.* at 140 (internal citations omitted). The *Scop* court ultimately concluded that "[n]one of our prior cases, however, has allowed testimony similar to [the expert's] repeated use of statutory and regulatory language indicating guilt." *Id.* at 142.

In the case at bar, the government proposes eliciting a legal conclusion from their expert witness – that is – that "the collections by both Depergola and Botta from Daniele involve the use of extortionate means." Such an opinion indeed states a legal conclusion – that the defendant used extortionate means – and clearly indicates that the jury should find Botta guilty because he in fact used extortionate means – a fact that is ultimately for the jury and the jury alone to decide.

Therefore, this Court should preclude the government from calling an expert witness in the areas proffered by the government.

### Conclsuion

For all of the foregoing reasons, the Defendant, Armando Botta, respectfully requests that this Court allow Defendant's Motion in Opposition, and grant whatever other and further relief this Court deems just and proper.

                                        Respectfully submitted,
                                        ARMANDO BOTTA

                                        By His Attorney

                                        Lori H. Levinson
                                        CAIN HIBBARD MYERS & COOK, P.C.
                                        66 West Street
                                        Pittsfield, MA 01201
                                        (413) 443-4771

Dated: June 5, 2006